UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-340-GWU

ROSCOE JONES, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Roscoe Jones brought this action to obtain judicial review of an unfavorable administrative decision on his applications for Disability Insurance Benefits and for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

>   Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.
>
> 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).
>
> 5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).
>
> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist.

Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Jones, a 50-year-old former laborer, stocker, and production laborer with a "limited" education, suffered from impairments related to degenerative disc disease, carpal tunnel syndrome, a dysthymic disorder, an anxiety disorder, and borderline intelligence.  (Tr. 15, 17). Despite the plaintiff's impairments, the ALJ determined that he retained the residual functional capacity to perform a restricted range of medium level work.  (Tr. 20). Since the claimant's past relevant work could still be performed, he could not be considered totally disabled.  (Tr. 21).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

In determining that Jones could return to his past relevant work, the ALJ relied heavily upon the information provided by Vocational Expert Anne Thomas. The hypothetical question presented to Thomas included an exertional restriction to medium level work, restricted from a full range by such non-exertional limitations

as (1) a need to avoid exposure to vibrations; (2) an inability to climb more than occasionally; (3) an inability to more than frequently perform handling or fingering; (4) a limitation to simple, object-focused tasks involving only casual and infrequent contact with others; (5) a "moderate" limitation in remembering or carrying out detailed instructions, performing within a schedule, maintaining regular attendance, being punctual within customary tolerances, interacting appropriately with the public, and responding appropriately to changes in the work setting. (Tr. 270-271). In response, the witness testified that Jones's past work as a laborer, stocker and production laborer could all still be performed. (Tr. 271). As an alternative, the witness also identified a significant number of other jobs at the medium and light levels which could still be done as well. (Tr. 271-272). Therefore, assuming that the vocational factors presented to Thomas fairly characterized the plaintiff's condition, a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to Jones's physical condition, Dr. Sam Kreis, the plaintiff's treating physician, examined him for the purposes of a fitness determination for a Commercial Driver's License (CDL) in December of 2004. Dr. Kreis reported finding no abnormalities with regard to the claimant's neurological system, spine, musculoskeletal system, abdomen, lungs, chest, vascular system, and heart. (Tr. 216). Jones's physical condition was noted to meet the physical fitness requirements for obtaining a CDL under the standards set forth in 49 C.F.R. §

391.41. (Id.). These examination results and findings are clearly inconsistent with Jones's claim of total disability. The ALJ's findings with regard to Jones's physical condition were compatible with this opinion. As a treating source, Dr. Kreis's opinion was entitled to superior weight. Therefore, Dr. Kreis's CDL examination results provide strong support for the administrative decision.

Dr. James Ross reviewed the record and opined that Jones would be capable of performing a restricted range of medium level work. (Tr. 179-186). The plaintiff would be limited to no more than occasionally climbing ladders, ropes or scaffolds, would have only a limited ability in handling or fingering, and would need to avoid concentrated exposure to vibrations. (Tr. 180-181, 183). The physical factors of the hypothetical question were consistent with this opinion.

Such treating and examining sources as Dr. Alan Graham (Tr. 108) and the staff at the Baptist Regional Medical Center (Tr. 109-124) did not report the existence of more severe physical restrictions than those found by the ALJ. Thus, these records provide additional support for the administrative decision.

Dr. John Johnson examined Jones and noted that he moved well on physical examination and that his range of motion in the lumbar spine was near normal. (Tr. 133). Dr. Johnson found no focal neurological deficit, atrophy, demonstrable weakness or reflex abnormality. (Id.). X-rays revealed degenerative changes in the thoracolumbar spine with a possible old compression fracture at L1. (Id.). The doctor reported a diagnostic impression of degenerative thoracolumbar disc

disease, a possible old compression fracture at L1, possible bilateral carpal tunnel syndrome, a history of gastrointestinal bleeding, a history of positive hepatitis C titer with elevated liver enzyme. (Id.). Dr. Johnson specifically indicated that the plaintiff had no limitation with regard to seeing, hearing, speaking and moving about. (Id.). The physician did state that "he is probably not a candidate for repetitive bending, lifting, stooping, crouching or climbing." (Id.). These are more severe restrictions than those found by the ALJ and Jones argues that the ALJ committed reversible error in omitting them from the hypothetical question. However, Dr. Johnson's opinion was offset by those of Dr. Kreis, the treating source, and Dr. Ross. Therefore, the court finds no error.

The ALJ also dealt properly with the evidence of record relating to Jones's mental condition.

Psychologist James Leisenring examined Jones and noted a diagnostic impression of a dysthymic disorder, an anxiety disorder, and borderline intelligence. (Tr. 128). Intelligence testing actually revealed IQ scores in the mental retardation range. (Tr. 127). However, Leisenring opined that the claimant did not put forth his best effort and his test results were not considered to be valid. (Tr. 126-127). The examiner speculated that the plaintiff's problems with anxiety would "significantly" compromise his ability to respond appropriately to supervision, co-workers, and

07-340 Roscoe Jones

work pressures. (Tr. 129). These are, arguably, more severe mental restrictions than those found by the ALJ.[1] However, Leisenring also indicated that:

> unfortunately, because of his overall approach to this assessment, about all that can be safely concluded in reference to his "actual" abilities is that it would appear to be as much a question of "won't as opposed to can't."

(Tr. 128).

Psychologist Edward Ross reviewed the record and opined that Jones would be "moderately limited" in such areas as: (1) understanding, remembering and carrying out detailed instructions, (2) performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; (3) interacting appropriately with the general public; and (4) responding appropriately to changes in the work setting. (Tr. 146-147). The mental factors of the hypothetical question were consistent with these limitations. Ross noted Leisenring's findings but opined that, as a result of the problems with malingering, this opinion was entitled to little weight. (Tr. 148).

Jones argues that the ALJ erred in rejecting the opinion of Leisenring, the examining source, in favor of that of Ross, a non-examining medical reviewer. The administrative regulations provide that "generally, we give more weight to the

---

[1] One could also argue that the mental limitations of the hypothetical question, particularly the limitations concerning the need for a restriction to simple, object-focused tasks with only casual and infrequent contact with others would be sufficient to accommodate the mental limitations identified by Leisenring concerning dealing with supervision, co-workers and work pressures.

07-340 Roscoe Jones

opinion of a source who has examined you than to the opinion of a source who has not examined you. 20 C.F.R. § 404.1527(d)(1). However, an ALJ may rely upon the opinion of a non-examiner over that of an examining source when the non-examiner clearly states the reasons for his differing opinion. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). In the present action, Ross clearly indicated that Leisenring's opinion was unreliable to the malingering on the part of the claimant during the examination. Leisenring, himself, questioned the results and noted that it was an issue of "won't as opposed to can't." Therefore, under these circumstances, the court finds no error.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 9th day of July, 2008.

Signed By:
G. Wix Unthank
United States Senior Judge